IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KIM SKELTON,

                                                    OPINION AND ORDER

                    Plaintiff,

                                                        09-cv-296-bbc

            v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is an action for judicial review of an adverse decision of the Commissioner of

Social Security, denying plaintiff Kim Skelton's application for Disability Insurance Benefits

and Supplemental Security Income under Title II and Title XVI of the Social Security Act,

codified at 42 U.S.C. §§ 416(I), 423(d) and 1382(c)(3)(A).  Plaintiff contends that the

administrative law judge improperly rejected her treating physicians' opinions in favor of the

opinions of two state agency physicians and failed to develop the record with respect to

conflicting pulmonary function tests.  Because I agree with plaintiff on almost all counts, I

am reversing the commissioner's determination and remanding this case for further

proceedings.

1

The following facts are drawn from the administrative record (AR):

FACTS

A. <u>Background</u>

Plaintiff was born on February 19, 1963 and has a high school education.  Her past relevant work includes work as a machine operator, packer, cashier or checker and housekeeper.  AR 25.

Plaintiff applied for disability insurance benefits and supplemental security income on August 29, 2005, alleging disability since August 19, 2005 because of chronic obstructive pulmonary disease, emphysema, arthritis in her spine and nerve disease in her legs and feet.  AR 68.  She subsequently amended her onset date to September 1, 2005.  AR 108.

After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on October 15, 2008 before Administrative Law Judge John H. Pleuss.  The administrative law judge heard testimony from plaintiff, AR 388-408, and a neutral vocational expert, AR 408-16.  On November 3, 2008, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 18-26.  This decision became the final decision of the commissioner on March 9, 2009, when the Appeals Council denied plaintiff's request for review.  AR 6-8.

2

In a disability report, plaintiff indicated that she had vertigo that kept her from driving or going too far from home. AR 87. She also wrote that her daughter cleans her house, cooks for her and takes her clothes to the laundromat. Plaintiff reported that she could walk only one block. AR 90.

B. <u>Medical Evidence</u>

1. <u>Dr. S. Patel and 2005 pulmonary function test</u>

On November 1, 2005, Dr. S. Patel, a fellow of the American College of Chest Physicians, performed a pulmonary function test on plaintiff at Beloit Memorial Hospital. The report indicated that plaintiff appeared to exert maximal efforts, with good toleration for testing. After using the bronchodilator, plaintiff's breathing improved. The test showed plaintiff's diffusing capacity (DLCO) was 34 percent of predicted capacity before the bronchodilator treatment and her forced expiratory volume (FEV1) was 40 percent of predicted capacity. AR 116-19.

Dr. Patel examined plaintiff on November 29, 2005 and stated that she had a history of heavy prolonged smoking and clinical and physiologic evidence of premature chronic air flow limitation with features of asthma and emphysema. AR 208. Patel discussed smoking cessation with plaintiff at considerable length. AR 208.

2. <u>Dr. Michael Slovik</u>

On December 6, 2005, plaintiff saw Dr. Michael F. Slovik for shortness of breath that she experienced with minimal activity and talking. AR 263. A November 23, 2005 computed tomography scan of plaintiff's chest indicated minor air pocket changes throughout the lungs bilaterally. AR 115. At her appointment, plaintiff reported ringing in her ears. Slovik discussed smoking cessation with her. AR 263.

On December 7, 2005, Dr. Slovik completed a report for Sun Life Assurance Company of Canada, plaintiff's long term disability insurance carrier. He stated that he had last examined plaintiff on December 6, 2005 and had treated her every two to four weeks since August 8, 2005. Slovik diagnosed chronic obstructive pulmonary disease, asthma and peripheral neuropathy. He stated that plaintiff could stand or walk one to four hours, sit three to five hours and drive one to three hours in a normal work day. Slovik indicated that she could not bend, squat, climb, balance, kneel or crawl. Although Slovik did not restrict plaintiff's lifting, he stated that she could not work an eight-hour day because of her shortness of breath. He concluded that plaintiff had a class 4 impairment and was capable of performing part-time, sedentary activity in which there was no need to talk and no exposure to fumes, humidity, chemicals or temperature extremes. AR 217-20.

On January 30, 2006, Dr. Slovik continued to treat plaintiff for chronic obstructive pulmonary disease and tinnitis. Plaintiff also reported vertigo. AR 260. In a letter dated

4

that same day, Slovik wrote that plaintiff could no longer work in any capacity because of severe medical illness.  AR 221.  On February 10, 2006, he submitted a medical examination and capacity report to the Rock County Interim Assistance agency, listing plaintiff's diagnoses as chronic obstructive pulmonary disease and peripheral neuropathy.   Slovik indicated that plaintiff could not breathe or move well because of neuropathic pain, could not lift or carry any weight and could not stand, walk or sit during an eight-hour work day. AR 224-25.  On March 7, 2006, Slovik treated plaintiff for vertigo.  AR 259.

Upon examining plaintiff on June 12, 2006, Dr. Slovik heard wheezing in her lungs but no decrease in breath sounds.  AR 252.  Her oxygen saturation level was 94 percent.  AR 253.  Three months later, on September 11, 2006, he heard a decrease in breath sounds. AR 362-63.  On October 25, 2006, plaintiff saw Slovik and reported that her dizziness had improved after taking Flexeril.  AR 358.

In an undated report for Sun Life, Dr. Slovik indicated that he had last examined plaintiff on October 25, 2006 and that he had treated her monthly since August 31, 2005. He reported that her diagnoses were chronic obstructive pulmonary disease and idiopathic peripheral neuropathy.  It was Slovik's opinion that in a normal work day, plaintiff could not stand or walk but could sit or drive for one to three hours; could not use her feet for repetitive movement; could lift a maximum of five pounds; and could not bend, squat, climb, twist her body, push, pull, kneel or crawl.  He concluded that plaintiff had a class 5

5

impairment, could not work an eight-hour day because of shortness of breath and was permanently incapable of even sedentary activity.  AR 110-13.

### 3.  Dr. Paul O. Simmestad

On February 9, 2006, Dr. Slovik referred plaintiff to Dr. Paul O. Simmestad at the free clinic in Middleton, Wisconsin.  Plaintiff reported vertigo, ringing in the ears and dizziness.  Upon examination, Simmestad noted distant sounds at the bases of plaintiff's lungs and some wheezes in deep breathing.  He concluded that plaintiff's major problems were dizziness and chronic obstructive pulmonary disease.  Simmestad wrote that plaintiff's dizziness could be caused by her medications and that her chronic obstructive pulmonary disease would be much better if she stopped smoking.  He recommended a smoking cessation clinic.  Simmestad stated the opinion that plaintiff's chronic obstructive pulmonary disease was severe enough to prevent her from working:  "She should be on Social Security Disability and Medicaid even if some of the problems improve."  AR 222-23.

### 4.  Dr. Andrea Martonffy

Plaintiff first saw Dr. Andrea Martonffy on August 22, 2005, when Martonffy admitted plaintiff to Beloit Memorial Hospital for exacerbation of chronic obstructive

6

pulmonary disease.  Plaintiff was discharged the next day.  AR 150-51.  A chest x-ray showed no active lung disease.  AR 155.

Over a year later, plaintiff began seeing Dr. Martonffy for treatment.  On December 12, 2006, plaintiff reported increased shortness of breath.  Martonffy noted that plaintiff had decreased breath sounds throughout and mild scattered wheezes.  AR 356-57.

On April 4, 2007, Dr. Martonffy noted that plaintiff's breath sounds were decreased but that she had no wheezes.  Plaintiff's oxygen saturation was 97 percent.  AR 354.  On September 4, 2007, Martonffy noted plaintiff had decreased breath sounds and scattered wheezes.  Plaintiff's oxygen saturation was 97 percent.  AR 353.  Martonffy discussed smoking cessation with plaintiff.  AR 353.

On February 14, 2008, plaintiff returned to Dr. Martonffy, who noted incorrectly that she had not seen plaintiff in almost a year.  Because plaintiff was out of albuterol, Martonffy gave her two treatments. After the treatments, plaintiff's wheezes decreased.  Her oxygen saturation was 96 percent.  AR 349-50.  On June 3, 2008, plaintiff asked Martonffy to complete a form for Sun Life.  Martonffy's progress notes of that day indicate that plaintiff had been feeling well that week and had no shortness or breath or wheezing.  On the form, Martonffy indicated that she had treated plaintiff since 2005.  Martonffy diagnosed chronic obstructive pulmonary disease and limited plaintiff to no squatting, climbing, twisting, pushing, pulling, balancing, kneeling or crawling; occasional driving,

7

walking, standing and reaching above shoulder level; lifting up to 10 pounds and carrying up to five pounds; and frequent sitting.  Martonffy concluded that plaintiff was unable to work because of shortness of breath.  AR 369-71.

### C.  Consulting Physicians

The electronic case development worksheet used by the state disability agency adjudication team contains a March 6, 2006 note that states:

> Beloit Mem Hosp: 03, 11/1/05. PFT's for COPD/SOB after exertion. Spirometry shows listing level pre-bronch FEV1 reading (1.23, 40% predicted) & DLCOunc reading (8.6, 34% predicted).  Post-bronch reading not listing level.
>
> *  *  *
>
> Can't be allowed on FEV1 levels b/c post level above listing req.  DLCO is listing level but no data available on cl's effort/inspired vol (VI).  Can't meet/= SSA standards w/o that documented.  Order new PFT's w/ DLCO today.

On March 21, 2006, plaintiff was given a second pulmonary function test at the request of the disability determination bureau.  Before using the bronchodilator, plaintiff's diffusing capacity was 58 percent of predicted capacity and her forced expiratory volume was 60 percent of predicted capacity.  AR 226-40.

On March 28, 2006, state agency physician Syd Foster completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of chronic obstructive

8

pulmonary disease, emphysema, arthritis in her spine and nerve disorder in her lower extremities. Foster found that plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently; stand or walk two hours in an eight-hour workday; sit six hours in an eight-hour work day; and must avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation. Foster indicated that there was not a treating or examining source statement regarding plaintiff's physical capacities in the file.

Under additional comments on the assessment form, Dr. Foster wrote "see EWS," referring presumably to the electronic case development worksheet. The worksheet contains entries dated between November 7, 2005 and March 30, 2006. AR 283-87. A December 7, 2005 entry indicates that the state agency received a statement from Dr. Slovik, who reported that "cl can only work completely sed jobs w/no need to talk or be exposed to fumes, humidity, chemicals, temp extremes. Designated as Class 4 phys imp d2 mod limits of functional capacity, capable of sed act." AR 283. A March 6, 2006 entry states, "There are a couple of MD statements in the file, but they offer no quantitative restrictions nad [sic] overall disability is a decision reserved." AR 284.

On July 25, 2006, state agency physician Dar Muceno affirmed Foster's assessment after reviewing the evidence. AR 276.

### D. <u>Hearing Testimony</u>

Plaintiff testified that she lived in an apartment in Beloit, Wisconsin.  AR 388-89. She stopped working in September 2005 because she had a hard time breathing.  AR 398. Three months later, her medical insurance stopped.  AR 400.  Since then, plaintiff has been treated by Dr. Slovik and Dr. Martonffy at the Beloit Community Health Center and the Beloit Memorial Hospital emergency room.  AR 400.

Plaintiff testified that she takes 12 medications a day that make her dizzy and forgetful.  In December 2007, plaintiff became dizzy, fell and broke her leg.  AR 401-02. She testified that she uses a nebulizer machine every four hours.  AR 402.

Plaintiff testified that she receives long-term disability benefits.  AR 403.  She sits on her couch all day, except that once in a while she drives one block to pick up her granddaughter from school.  Plaintiff's boyfriend does all the household chores and cooking. AR 404.  Plaintiff testified that she can sit and stand for only 10 to 15 minutes at a time and not walk without having difficulty breathing.  On one occasion, she walked to the store with her daughter and was gone for 30 minutes.  However, her legs were hurting and burning after that.  AR 405.  She testified that she has smoked three packs a day since she was 12 years old but is taking a medication to help her quit.  At the time of the hearing, plaintiff was smoking only one cigarette a day.  AR 406.

10

The administrative law judge called Robert Verkins to testify as a neutral vocational expert. The expert testified that plaintiff's past work was unskilled light level work except that her job as a cashier or checker was semi-skilled light work.  AR 409.  The administrative law judge asked Verkins whether there were jobs available in Wisconsin that could be performed by an individual who is limited to sedentary work but precluded from work exposing the person to concentrated dust, fumes, smoke, chemicals or noxious gases.  AR 409.  Verkins testified that the individual could perform 900 bench work assembly jobs, 400 production inspector jobs, 600 machine feeder jobs, 1000 hand packager jobs, 600 sedentary cashier jobs, 50 security guard monitor jobs and 400 information clerk jobs.  The administrative law judge asked Verkins whether his testimony was different from the information in <u>The Dictionary of Occupational Titles</u>.  He responded no.  AR 410.

On cross examination, plaintiff's attorney asked the expert to assume an individual with the restrictions Slovik found in his December 7, 2005 report.  He then asked Verkins whether the individual would be able to perform any of the previously identified jobs. Verkins answered that the individual would not be able to perform any competitive employment on a full-time basis.  AR 413.

11

E.  Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. §§ 404.1520, 416.920. Under this test, the administrative law judge considers sequentially 1) whether the claimant is currently employed; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1; 4) whether the claimant can perform his past work; and 5) whether the claimant is capable of performing work in the national economy.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).  If a claimant satisfies steps one through three, she is found automatically to be disabled.  If the claimant meets steps one and two, but not three, then she must satisfy step four.  Id.  The claimant bears the burden of proof in steps one through four.  If the claimant satisfies step four, the burden shifts to the commissioner to prove that the claimant is capable of performing work in the national economy.  Id.

At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since September 1, 2005, her amended alleged onset date.  AR 20. At step two, he found that plaintiff had severe impairments of chronic obstructive pulmonary disease, back impairment and idiopathic peripheral neuropathy.  At step three, he found that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.

12

Specifically, he found that the results of plaintiff's March 26, 2006 pulmonary function test did not satisfy the requirements of Listing 3.02C(1).  AR 21-22.

The administrative law judge found that plaintiff retained the residual functional capacity to perform sedentary work that did not expose her to concentrated dust, fumes, smoke, chemicals or noxious gases.  AR 22.  In determining plaintiff's residual functional capacity, the administrative law judge concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible.  AR 23.

At step four, the administrative law judge found that plaintiff was not able to perform her past work.  AR 24.  Relying on the vocational expert's testimony, the administrative law judge found at step five that there were 900 bench assembler jobs, 400 production inspector jobs, 600 machine feeder jobs, 1000 hand packager jobs, 600 cashier jobs, 50 security guard or monitor jobs and 400 information clerk jobs available in Wisconsin that plaintiff could perform.  The administrative law judge found the expert's testimony was consistent with the information contained in the <u>Dictionary of Occupational Titles</u>.  He then concluded that plaintiff was not disabled.  AR 25-26.

OPINION

A.  <u>Standard of Review</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are

13

supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B. Residual Functional Capacity Assessment

Plaintiff contends that the administrative law judge improperly rejected the opinions of Drs. Slovik and Martonffy in favor of the opinions of the two agency physicians in determining that plaintiff could perform full-time sedentary work without exposure to

concentrated dust, fumes, smoke, chemicals or noxious gases.  Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).

The amount of weight that an administrative law judge should give to the opinion of a treating physician depends on the circumstances.  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  However, when the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors.  Id.  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., and must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).  An opinion of a non-examining physician is not sufficient by itself to provide evidence necessary

15

to reject a treating physician's opinion.  <u>Gudgel v. Barnhart</u>, 345 F. 3d 467, 470 (7th Cir.

2003).

By comparison, the weight given the opinion of a non-examining source depends on

"the degree to which [the source] provide[s] supporting explanations."  20 C.F.R. §§

404.1527(d)(3), 416.927(d)(3).   Social Security Ruling 96-6p provides the following

guidance on weighing the opinions of state agency physicians:

> The regulations provide progressively more rigorous tests for
> weighing opinions as the ties between the source of the opinion
> and the individual become weaker.  For example the opinions of
> physicians or psychologists who do not have a treatment
> relationship with the individuals are weighed by stricter
> standards, based to a greater degree on medical evidence,
> qualifications, and explanations for the opinions, than are
> required by treating sources.
>
> *   *   *
>
> . . . the opinions of state agency medical and psychological
> consultants and other program physicians and psychologists can
> be given weight only insofar as they are supported by evidence in
> the case record, considering such factors as the supportability of
> the opinion in the evidence including any evidence received at
> the administrative law judge and Appeals Council levels that was
> not before the State agency, the consistency of the opinion with
> the record as a whole, including other medical opinions, and any
> explanation provided by the State Agency medical or
> psychological consultant or other program physician or
> psychologist.

Plaintiff contends that the administrative law judge did not provide good reasons for rejecting the opinions of Drs. Slovik and Martonffy that plaintiff's shortness of breath prevented her from working. She also asserts that he ignored the opinion of Dr. Simmestad and failed to discuss favorable medical evidence from after 2006. Finally, plaintiff challenges the opinions of the consulting physicians on the ground that they did not explain their opinions or support them with evidence in the record.

1. Dr. Slovik

The administrative law judge found Slovik's undated assessment following plaintiff's October 2006 visit to be unpersuasive and not supported by objective medical evidence. He noted that Slovik's opinion that plaintiff could not stand or walk in a normal workday was inconsistent with plaintiff's testimony that she could do some standing or walking. As an initial matter, I note that evidence of plaintiff's walking ability in 2008 is not necessarily material to Slovik's opinion in 2006. In fact, in 2008, Dr. Martonffy concluded that plaintiff could walk and stand occasionally. In any event, the minimal activities in which plaintiff engaged are not inconsistent with Dr. Slovik's limitations.

Plaintiff testified that she could stand only 10 to 15 minutes at a time. Although she tries to get up and walk in her home on occasion, she only walks downstairs. Plaintiff did testify that she once walked to a store and was gone a total of 30 minutes. However, she

17

made clear that she usually cannot walk at all without having breathing difficulties.  Plaintiff reported that her daughter takes plaintiff's clothes to the laundromat and plaintiff's boyfriend does all the household chores and cooking.  Once in a while, plaintiff drives to pick up her granddaughter from school, a block away.

I note that the administrative law judge did not find plaintiff's testimony to be entirely credible, and plaintiff does not challenge that determination.  However, it is difficult to determine from the administrative law judge's decision which portions of plaintiff's testimony he discounted.  He appears to credit her testimony that she can stand and walk but did not comment on the credibility of her description of her minimal daily activities.  He stated only that her self-reported symptoms are "not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Assuming that plaintiff's accounts are true, which I must in the absence of further guidance from the administrative law judge, plaintiff's testimony does not refute Slovik's assessment of her limitations or show that she is capable of full-time work.

The administrative law judge also pointed out that the limitations assessed by Slovik on December 7, 2005 were much less restrictive than those in the 2006 assessment.  For example, in the first assessment, Slovik stated that plaintiff could stand or walk one to four hours, sit three to five hours and not work full time.  In the later assessment, Slovik stated that plaintiff could not stand or walk but could sit one to three hours.  Without explanation,

18

the administrative law judge stated that there was no medical evidence to support such a discrepancy.  However, my review of the record shows that in the period between the completion of the two reports, plaintiff's condition appeared to deteriorate.

In January 2006, Dr. Slovik found plaintiff unable to work in any capacity because of severe medical illness.  In February 2006, he reported to a county assistance agency that plaintiff could not breathe or move well, could not lift or carry any weight and could not stand, walk or sit during an eight-hour work day.  Also that month, Slovik referred plaintiff to Dr. Simmestad, who noted distant sounds at the bases of plaintiff's lungs and wheezes in deep breathing.  Simmestad concluded that plaintiff's chronic obstructive pulmonary disease was severe enough to prevent her from working.  In March 2006, the state agency conducted a pulmonary function test that showed plaintiff's diffusing level at 58 percent of predicted capacity.  (As discussed further below, this diffusing level does not support a finding that plaintiff had a listed impairment.  However, it does indicate that plaintiff was severely impaired by chronic obstructive pulmonary disease.)  In June 2006, Dr. Slovik reported hearing wheezing in plaintiff's lungs and decreased breath sounds.  On September 11, 2006, he again heard a decrease in breath sounds.

The commissioner attempts to dismiss this evidence as minimal objective findings. However, the administrative law judge failed to evaluate any of it and did not even mention Dr. Simmestad.  As the commissioner points out, the weight to be given Dr. Simmestad's

19

opinion concerning plaintiff's inability to work is a decision reserved for the administrative law judge. At the least, however, he should have considered Simmestad's opinion and treatment notes in determining the weight to be given Dr. Slovik's second opinion that plaintiff was unable to work.

Finally, the administrative law judge criticizes Dr. Slovik for finding in his first assessment that plaintiff had no ability to balance and then determining in his second report that she did have that ability. However, he fails to explain why he thinks this discrepancy is significant. Whether plaintiff could balance does not relate to the severity of her chronic obstructive pulmonary disease. Further, plaintiff's balance presumably relates to her dizziness and vertigo, which Slovik noted had improved by October 2006.

2. Dr. Martonffy

The administrative law judge did not find Dr. Martonffy's 2008 assessment persuasive, stating that it was internally inconsistent. He noted that although Martonffy found that plaintiff could frequently sit and occasionally perform other tasks, she concluded that plaintiff was unable to work because of shortness of breath. The administrative law judge failed to explain why he found this significant. It is reasonable to conclude that even though plaintiff could do some physical activity, her impairment causes her shortness of breath that precludes her from working an eight-hour day.

20

The administrative law judge also found that Dr. Martonffy's assessment was not consistent with the treatment notes of the same date, in which Martonffy noted that plaintiff reported doing well over the past week without wheezing or shortness of breath.  Although this is true, Martonffy's treatment notes from December 12, 2006 to February 14, 2008 indicate that plaintiff regularly had decreased breath sounds and scattered wheezes.  Further, the administrative law judge does not explain why he believed that plaintiff could work full time just because she had one good respiratory examination.  Isolated remarks in clinic notes to the effect that a patient is "doing well" are not necessarily inconsistent with a doctor's opinion that the person is disabled.  <u>Bauer v. Astrue</u>, 532 F.3d 606, 609 (7th Cir. 2008).

In sum, the administrative law judge failed to explain his reasoning or provide good reasons supported by substantial evidence in the record for rejecting the opinions of Dr. Slovik and Dr. Martonffy.  Accordingly, this case must be remanded for further proceedings.

3.  <u>State agency physicians</u>

Plaintiff argues that the administrative law judge should not have placed great weight on the opinions of the state agency physicians because they failed to explain what evidence they relied on or even whether they reviewed the records of plaintiff's treating physicians.  On the questionnaire that Dr. Foster completed, he indicated that there was not a treating source statement regarding the plaintiff's physical capacities in the file.  Further, under the

21

additional comments section, Foster referred to the case development worksheet, which incorrectly states that the doctor's statements in the file did not offer quantitative restrictions. Although the case development worksheet does not summarize the restrictions assessed by Dr. Slovik on December 27, 2005, it does indicate that the agency received his report. Given this, it appears that Foster did not consider Slovik's quantitative restrictions and dismissed as irrelevant Slovik's overall opinion that plaintiff was disabled. Dr. Muceno later affirmed Foster's opinion summarily without identifying what evidence he had reviewed. Without further explanation, it is impossible to tell whether the opinions of the state agency physicians and the resulting decision of the administrative law judge are supported by substantial evidence in the record.

Plaintiff notes correctly that the state agency physicians did not have the benefit of the medical evidence produced between 2006 and 2008. As previously discussed, plaintiff's condition continued to deteriorate after Dr. Muceno issued his opinion on July 25, 2006. It is possible that the more recent evidence would have affected the opinions of the state agency physicians. The commissioner does not contest this argument. Although the administrative law judge accepted the updated medical evidence, there is no indication that he considered it or its effect on the opinions of the state agency physicians. Accordingly, on remand, the administrative law judge should weigh the opinions of Dr. Slovik, Dr. Martonffy

and the state agency physicians in light of <u>all</u> of the evidence of record, including that from

after 2006.

## C.  Listing Level Impairment

Listing 302C(1)requires that an individual have a chronic impairment of gas exchange

caused by clinically documented pulmonary disease with a "single breath DLCO (see 300F1)

less than 10.5 ml/min/mm HG or less than 40 percent of the predicted normal value."  The

administrative law judge cited the March 21, 2006 consultative pulmonary function test,

which showed that plaintiff had a DLCO of 58 percent of predicted capacity, and stated that

"I find that the claimant clearly does not satisfy the requirements of Listing 3.02C(1)."  AR

22.  Although the test report does not comment on plaintiff's effort, the adjudicator

incorrectly wrote that the plaintiff demonstrated good effort throughout the testing.  AR 21-

22.  Further, the administrative law judge failed to discuss the specific results of plaintiff's

November 1, 2005 pulmonary function test performed by Dr. Patel, noting only that plaintiff

improved significantly after a bronchodilator treatment.  AR 21.  (I note that plaintiff asserts

that the adjudicator's statement is erroneous because no post-bronchodilator percentage was

listed on the 2005 report.  However, the statement is consistent with Patel's report that

plaintiff's condition had improved with the treatment.)

23

Plaintiff criticizes the administrative law judge for not discussing the conflicting test results or his reasons for rejecting the 2005 test results, which showed a pre-bronchodilator reading of 34 percent predicted capacity.  Plaintiff also points out that the state agency ordered a new test in the incorrect belief that no data was available on plaintiff's effort during the 2005 DLCO test.  Patel indicated in his report that plaintiff appeared to exert maximal efforts, with good toleration of testing.

Although the state agency may not have had reason to order a new pulmonary function test in 2006, the administrative law judge was entitled to rely on the more recent test in determining that plaintiff did not meet Listing 302C.  He also did not have to mention every piece of evidence in the record.  Ribaudo v. Barnhart, 458 F.3d 580, 584 (7th Cir. 2006); Sims v. Barnhart, 309 F.3d 424, 429 (7th Cir. 2002).  However, an administrative law judge must at least "build a bridge from the evidence to his conclusion."  Sims, 309 F.3d at 429 (quoting Green v. Apfel, 204 F.3d 780, 781 (7th Cir. 2000)).

In this case, the administrative law judge failed to evaluate one of the strongest pieces of evidence supporting plaintiff's claim.  Ribaudo, 458 F.3d at 584 (finding failure to evaluate supportive evidence did "not provide much assurance that [administrative law judge] adequately considered Ribaudo's case"); Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 786 (7th Cir. 2003) (criticizing failure to discuss conflicting evidence at step 3, including strongest piece of evidence favorable to claimant).  Because the adjudicator's decision

24

contains no discussion of the conflicting test results or his reasons for rejecting the results that are more favorable to plaintiff, it is impossible to tell whether his conclusion is supported by substantial evidence in the record.

The commissioner suggests that the administrative law judge may have believed that plaintiff's condition had improved by the date of the second test.  The administrative law judge noted in various parts of his decision that plaintiff's breathing problems improved when she used her nebulizer, Dr. Martonffy reported in 2008 that plaintiff was doing well without wheezing or shortness of breath and, although Dr. Slovik stated in 2006 that she could not walk, plaintiff testified that she walked for 30 minutes.  However, merely alluding to medical improvement is not sufficient.  Mulligan v. Astrue, 2009 WL 2018564, *6 (7th Cir. Jul. 13, 2009) (administrative law judge must explain medical improvement that purportedly eliminated plaintiff's disability).  "[A]n ALJ [must] substantiate his assessment . . . , see Stewart v. Astrue, 561 F.3d 679, 684 (7th Cir. 2009), a process often referred to as 'build[ing] an accurate and logical bridge from the evidence to the conclusion,' Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)."  Id.  The general references to plaintiff's improvement are not necessarily inconsistent with Slovik's and Martonffy's opinions that plaintiff could not work because of her shortness of breath.  Feeling better after using a nebulizer or the ability to walk for 30 minutes on one occasion are not obvious indicators of plaintiff's ability to work full time.

25

On remand, the administrative law judge should address the conflicting pulmonary function test results and explain how substantial evidence supports his decision to favor one test over the other.  Although it is the administrative law judge's responsibility to resolve conflicts in the medical evidence, his findings must be based on testimony and medical evidence in the record and not on his own medical conclusions.  Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000) (adjudicator may not substitute himself for doctor or make medical determinations); Rohan v. Charter, 98 F. 3d 966, 970 (7th Cir. 1996) (citations omitted). Therefore, to clarify the evidence and avoid reaching his own medical conclusions, I suggest that the administrative law judge call a medical expert or order another consultative examination to explain the significance of the pulmonary function tests and account for the differing results in light of all the evidence of record.  Skinner v. Astrue, 478 F.3d 836, 844 (7th Cir. 2007); 20 C.F.R. § 404.1519a (adjudicator not required to consult medical expert but is permitted to do so if evidence is insufficient to make determination).

### D.  Conclusion

I am remanding this case to the commissioner because he has failed to build a logical and accurate bridge from the evidence in the record to his conclusion that plaintiff is not disabled.  On remand, the administrative law judge should obtain new opinions of state agency physicians based on the treatment records dated after 2006 and call a medical expert

26

to evaluate these records and the conflicting pulmonary function test reports.  In addition, he should evaluate the weight to be given to the opinions of plaintiff's treating physicians, Drs. Slovik and Martonffy, in light of all of the evidence of record.  If the adjudicator chooses to reject those opinions in favor of an opinion of a non-treating physician or expert, he should provide good reasons for his decision and explain how his decision is supported by substantial evidence in the record.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Kim Skelton's application for disability insurance benefits and supplemental security income is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment in favor of plaintiff and close this case.

Entered this 3rd day of December, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

27